## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————

ADYA LLC d/b/a SMARTCARERX,

       *Plaintiff,*

       v.

TERRANCE C. COLE, et al.,

       *Defendants.*

———————————————————————

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 1:26-cv-00141

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ..................................................................................................................... 4

    A.    SmartCareRx Has Served the Greater Orlando Community Since June 2021 ....... 4

    B.    DEA Abruptly Halted SmartCareRx's Ability to Dispense Controlled Substances on December 19, 2025 ........................................................................................ 5

LEGAL FRAMEWORK ........................................................................................................ 6

    A.    The Controlled Substances Act Requires a Showing of Imminent Harm to the Public to Suspend a Certification of Registration .................................................. 6

    B.    The District Court is a Court of Competent Jurisdiction to Enjoin an ISO ............ 7

    C.    Preliminary Injunctions Require a Showing of Four Factors ................................. 8

ARGUMENT ........................................................................................................................... 8

    A.    SmartCareRx is Likely to Succeed on the Merits .................................................. 8

        1.    DEA's Actions Were Arbitrary and Capricious ......................................... 9

            a.    *DEA's Allegations Do Not Support a Finding of Harm to the Public, Imminent or Otherwise* .................................................... 10

            b.    *DEA's Investigation was Inadequate* ........................................... 12

            c.    *The Timing of the ISO Underscores the Agency's Action was Arbitrary* ..................................................................................... 13

            d.    *DEA's ISO is Overbroad and Not Narrowly Tailored to Address the Alleged Misconduct* ........................................................ 13

        2.    DEA Violated SmartCareRx's Due Process Rights By Issuing the ISO .. 15

    B.    SmartCareRx Will Suffer Irreparable Harm Absent Injunctive Relief ................ 16

    C.    The Balance of Hardships Lies in Favor of SmartCareRx .................................. 20

    D.    Injunctive Relief is in the Interest of the Public .................................................. 21

CONCLUSION....................................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adya LLC v. Cole, et al.*,
No. 1:26-cv-00141 (D.D.C. Jan. 21, 2026)..............................................................................6

*Bates Drug Stores, Inc. v. Holder*,
2011 WL 1750066 (E.D. Wa. May 6, 2011) ...................................................................12, 18

*Beacon Associates, Inc. v. Apprio, Inc.*,
308 F.Supp.3d 277 (D.D.C. 2018) ....................................................................................8, 18

*Cardinal Health, Inc. v. Holder*,
846 F. Supp. 2d 203 (D.D.C. 2012) ......................................................................................15

*Climate United Fund v. Citibank, N.A.*,
778 F. Supp. 3d 90 (D.D.C. 2025) ..........................................................................................9

*Feinerman v. Bernardi*,
558 F. Supp. 2d 36 (D.D.C. 2008) ........................................................................................19

*General Elec. Co. v. Jackson*,
610 F.3d 110 (D.C. Cir. 2010) ................................................................................................5

*Goodson Drug Co., Inc. v. Bondi*,
2025 WL 3405237 (N.D. Ga. Oct. 15, 2025) ...........................................12, 13, 17, 19, 20, 21

*Holiday CVS, L.L.C. v. Holder*,
2012 WL 10973832 (D.D.C. Feb. 7, 2012) ........................................................ 18, 19, 20, 21

*Holiday CVS, L.L.C. v. Holder*,
839 F. Supp. 2d 145 (D.D.C.), *vacated and remanded*, 493 F. App'x 108
(D.C. Cir. 2012) ....................................................................................................................19

*Int'l Ladies' Garment Workers' Union v. Donovan*,
722 F.2d 795 (D.C. Cir. 1983) ............................................................................................. 14

*League of Women Voters of United States v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ...........................................................................................15, 17

*Matthews v. Eldrige*,
424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)...............................................................14

*Morgan Stanley DW Inc. v. Rothe*,
150 F. Supp. 2d 67 (D.D.C. 2001) ..........................................................................................7

*Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)................................................9

*Neil Laboratories, Inc. v. Ashcroft*,
    217 F. Supp. 2d 80 (D.D.C. 2002) ............................................................................7

*Norman Bridge Drug Co. v. Banner*,
    529 F.2d 822 (5th Cir. 1976) ............................................................................7, 13

*Novelty Distribs., Inc. v. Leonhart*,
    562 F. Supp. 2d 20 (D.D.C. 2008) ............................................................................8

*Oak Hill Hometown Pharmacy v. Dhillon*, 418 F. Supp. 3d 124 (S.D. W. Va.
    2019) ........................................................................................................................9

*Patriot, Inc. v. U.S. Dept. of Housing and Urban Dev.*,
    963 F. Supp. 1 (D.D.C. 1997) ................................................................................17

*Sherley v. Sebelius*,
    644 F.3d 388 (D.C. Cir. 2011) ..................................................................................8

*Smoking Everywhere, Inc. v. U.S. Food and Drug Admin.*,
    680 F. Supp. 2d 62 (D.D.C. 2010) ..........................................................................19

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)..........................................8, 18

**Rules**

Fed. R. Civ. Proc. 65..........................................................................................................1

**Statutes**

5 U.S.C. § 702....................................................................................................................19

5 U.S.C. § 706......................................................................................................................9

5 U.S.C. § 706(2)(A)............................................................................................................9

21 U.S.C. § 801....................................................................................................................6

21 U.S.C. § 822....................................................................................................................6

21 U.S.C. § 824(a)................................................................................................................7

21 U.S.C. § 824(c)(1)............................................................................................................7

21 U.S.C. § 824(d)................................................................................................................7

21 U.S.C. § 824(d)(1) ...................................................................................................7, 9

21 U.S.C. § 824(d)(2) ......................................................................................................10

21 U.S.C. § 877 ..................................................................................................................8

**Other Authorities**

21 C.F.R. § 1301.36(c)......................................................................................................14

21 C.F.R. § 1301.36(g) .....................................................................................................14

78 Fed. Reg. 69441, 69445 (Nov. 19, 2013)......................................................................1

90 Fed. Reg. 8039 (Jan. 23, 2025) ...................................................................................20

90 Fed. Reg. 14476 (Apr. 2, 2025) ..................................................................................19

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Adya LLC d/b/a SmartCareRx ("SmartCareRx" or the "Pharmacy") submits this Memorandum of Law in Support of its Renewed Motion for Preliminary Injunction to enjoin Defendants Terrance C. Cole, in his official capacity as Administrator of the United States Drug Enforcement Administration ("DEA"), the DEA, Pamela J. Bondi, in her official capacity as the United States Attorney General, and the United States Department of Justice ("DOJ") (collectively, "Defendants") from enforcing DEA's December 19, 2025, Immediate Suspension Order ("ISO"), and to grant any other relief the Court deems just and proper.

## PRELIMINARY STATEMENT

SmartCareRx has endured the deleterious effects of the DEA's arbitrary and capricious ISO for months: over the past 68 days, the ISO has tarnished the Pharmacy's hard-earned reputation, undermined its goodwill, caused the loss of hundreds of customers, inhibited the Pharmacy from fulfilling its mission to timely provide patients with life-saving specialty medications, and threatened the very existence of the business. Since opening its doors in June 2021, SmartCareRx has worked hard to build its reputation as a trusted healthcare partner, providing quality service to its patients and the greater Orlando medical community. But now almost daily, SmartCareRx is faced with informing physicians who seek to send prescriptions to the Pharmacy that it can no longer fulfill the specialty medication needs of their patients. Without warning, without providing SmartCareRx with an opportunity to defend itself, and without sufficient basis in law or fact, Defendants wrongfully suspended SmartCareRx's Certificate of Registration ("COR"); the Pharmacy can no longer dispense controlled substances. SmartCareRx is utilizing DEA's administrative process to ensure its right to be heard; however, as a growing business, it cannot afford an arbitrary suspension while it petitions the agency to reverse course.

1

DEA's extraordinary action requires an extraordinary remedy and SmartCareRx respectfully requests that the Court issue a preliminary injunction.

*First*, SmartCareRx is likely to succeed on the merits: DEA's issuance of the ISO was not only arbitrary and capricious, but it also violated Plaintiff's due process rights. DEA's allegations in the ISO fail to demonstrate that SmartCareRx presents an imminent danger to public safety or health, underscoring that the ISO lacks a rational basis. Indeed, DEA's central allegation—that SmartCareRx has dispensed controlled substances prescribed to approximately forty "fictious" patients who have "no associated public records"—appears to be false; the mere existence of records for any one of these patients casts doubt not only on DEA's claims, but on the diligence and integrity of the entire investigation.[1]

Moreover, DEA's second allegation—that it allegedly observed a Pharmacy employee handing a red envelope to an individual on March 14, 2025—is itself not suggestive of any impropriety at all, much less an imminent danger to the public. DEA claims that on March 19, 2025, it pulled over the same car observed in the Pharmacy's parking lot, conducted a search, and found a red envelope containing oxycodone bottles. DEA additionally asserts these bottles were delivered to the Pharmacy on March 18, 2025—four days after DEA allegedly witnessed a Pharmacy employee deliver a red envelope. Rather than offering proof, DEA invites an inference of wrongdoing based on a chain of attenuated and internally contradictory inferences. Under DEA's own allegations, the recovered oxycodone bottles could not have been delivered to the driver by the Pharmacy in the parking lot on March 14, and DEA does not otherwise allege or explain how the driver obtained the bottles. DEA's mere speculation is insufficient to support a

---

[1] To date, Defendants have declined to provide the names of the "fictitious patients." As discussed at pg. 10, *infra*, Plaintiff has had to try to ascertain the names of the individuals at issue based on the initials provided in the ISO to run background searches.

finding that the controlled substances were unlawfully diverted from the Pharmacy and that the Pharmacy presents an imminent danger to the public. SmartCareRx is therefore likely to overcome these allegations and succeed on the merits.

*Second*, SmartCareRx will suffer irreparable harm without a preliminary injunction. Due to DEA's decision to issue an ISO—an extraordinary remedy that provides the Pharmacy no opportunity to be heard—patients of SmartCareRx are effectively denied access to their prescribed medications. Many of SmartCareRx's patients receive specialized drugs that are unavailable at other regional pharmacies, such as Spravato, a Schedule III controlled substance for patients suffering from treatment-resistant depression. In addition, the ISO damages SmartCareRx's revenue and economic prospects, business reputation, and customer goodwill. Customer loyalty in the pharmacy business is hard to earn, and grounded in personal relationships built on trust, quality service, and convenience. DEA's baseless allegations have irreparably damaged the Pharmacy's relationships with its customers, and the ISO has destroyed the Pharmacy's ability to offer its customers the specialized service and continuity of care they have come to expect. The Pharmacy's customers who have been forced to utilize competitor pharmacies may not return. The Pharmacy's purchasing agreements and certifications are now in jeopardy. This harm is anything but speculative—and the longer the ISO continues, the irreparable harm only continues to grow.

Further exacerbating the situation is the lack of a foreseeable resolution. To date, DEA has not assigned an Administrative Law Judge ("ALJ"), leaving the Pharmacy with no hearing date or definitive timeline to resolve the Order to Show Cause ("OSC") and the ISO. As a result, SmartCareRx is forced to endure an arbitrary suspension with no end in sight.

*Third*, the balance of hardships lies in favor of SmartCareRx because a preliminary injunction would not harm DEA or the public, while the ISO has harmed the Pharmacy's ability

to provide prescriptions to their patients. SmartCareRx's voluntary commitment to cease dispensing the three controlled substances in question throughout the duration of the administrative proceedings fully protects DEA's interests. In contrast, the continued enforcement of the ISO inflicts ongoing and unnecessary harm on the Pharmacy and its interests.

*Fourth*, injunctive relief is in the interest of the public, as DEA's ISO is a broad overreach and prevents the Pharmacy's patients from obtaining their prescribed medication for legitimate medical purposes. For these reasons, in addition to those set forth below, SmartCareRx respectfully requests that this Court grant the motion for preliminary injunction.

## BACKGROUND

### A.  SmartCareRx Has Served the Greater Orlando Community Since June 2021

As detailed in Plaintiff's First Amended Complaint, Dkt. No. 5, SmartCareRx is an independent pharmacy located in the Orlando area. The Pharmacy provides prescription services, including home delivery, medication consultation, health screenings, immunizations, and specialty medications to hundreds of patients. Starting in 2021 with a small team of three people, SmartCareRx has grown to approximately 20 employees in the last five years which is a testament to its growth and service to the community.

Specifically, the Pharmacy works to serve patients with unique or specialized medication needs, such as providing Schedule II stimulants to pediatric patients with neurological disorders, and the Schedule III controlled substance Spravato, administered under healthcare provider supervision for treatment-resistant depression. *See* Ex. 2, ¶¶ 3, 6. Spravato requires a mandatory Risk Evaluation and Mitigation Strategy ("REMS") program, stricter regulations, and higher supervision requirements. *Id.* ¶ 6. Prior to the ISO, SmartCareRx was a primary supplier of Spravato in the Orlando area, providing local providers and patients with easier, more reliable

4

access to this life-saving psychiatric intervention. *Id.* SmartCareRx has worked hard to become a reliable pharmacy to patients in its vicinity, ensuring that patients have quick access to specialty medications. *Id*. at ¶ 2.

### B. DEA Abruptly Halted SmartCareRx's Ability to Dispense Controlled Substances on December 19, 2025

As detailed in SmartCareRx's First Amended Complaint, DEA served the Pharmacy with an OSC and ISO on December 19, 2025. In the midst of the holiday season, DEA raided the Pharmacy and seized SmartCareRx's controlled substances. Prior to receiving the ISO, the Pharmacy had no warning that DEA had any concerns about its controlled substance dispensing.

The ISO, dated December 2, 2025, asserts: 1) that the Pharmacy dispensed controlled substances to "fictitious patients" with "no associated public records" between April 2024 and August 2025, Ex. 1 at 3.; and 2) that in March 2025, SmartCareRx was engaged in suspected "drug trafficking," when a Pharmacy employee allegedly unlawfully dispensed controlled substance to a single, unnamed individual for "other than legitimate medical purposes." *Id.* at 6. Notably, the ISO does not detail any purported "red flags" that would have alerted the Pharmacy that any of the prescriptions—issued by licensed medical professionals—were not for a legitimate medical purpose.

### C. SmartCareRx Seeks Relief from the Court Under the Administrative Procedure Act

On January 16, 2026, SmartCareRx filed the instant action under the Administrative Procedure Act ("APA"), challenging DEA's December 19, 2025, ISO. On the same date, Plaintiff also filed a Motion for Temporary Restraining Order, seeking injunctive relief. Pl.'s Mot. for Temporary Restraining Order, Dkt. No. 5. On January 20, 2026, the Court held a telephonic scheduling conference, where the parties agreed to a briefing schedule for Plaintiff's Preliminary

Injunction Motion and response. The Court held the Motion for Temporary Restraining Order in abeyance pending the preliminary injunction briefing and argument.

On January 28, 2026, Plaintiff filed its Motion for Preliminary Injunction. *See* Dkt. No. 11. In accordance with the briefing schedule set by the Court, Defendants DEA and Cole filed their Combined Opposition to Plaintiff's Motion for Preliminary Injunction and Motion to Dismiss and Memorandum in Support Thereof on February 11, 2026. *See* Dkt. Nos. 13, 14. SmartCareRx filed its Combined Reply In Support of Motion for Preliminary Injunction and Opposition to Defendants' Motion to Dismiss on February 18, 2026. *See* Dkt. No. 18. That same day, SmartCareRx also filed its First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B). *See* Dkt. No. 17.

On February 20, 2026, the Court requested that Counsel confer on an amended schedule, in light of the First Amended Complaint, and on February 23, 2026, the Court denied without prejudice Plaintiff's Motion for Temporary Restraining Order, Plaintiff's Motion for Preliminary Injunction, and Defendants' Motion to Dismiss as moot. *See* Feb. 23, 2026 Minute Order. SmartCareRx now files the instant Renewed Motion for Preliminary Injunction. A hearing is currently scheduled for March 13, 2026. *Id.*

## LEGAL FRAMEWORK

### A. The Controlled Substances Act Requires a Showing of Imminent Harm to the Public to Suspend a Certification of Registration

The Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 *et seq.*, alongside its implementing regulations, requires pharmacies like SmartCareRx to maintain a registration issued by DEA to store, prescribe, and dispense controlled substances. *See* 21 U.S.C. § 822. The CSA contemplates scenarios where a registration "may be suspended or revoked by the Attorney General," including a finding that the registrant "has committed such acts as would render his

registration . . . inconsistent with the public interest." 21 U.S.C. 824(a). The statute also requires that prior to taking action to revoke or suspend a registration, DEA must serve the registrant with "an order to show cause why registration should not be denied, revoked, or suspended." 21 U.S.C. 824(c)(1).

While DEA must typically satisfy notice and due process requirements under the CSA before suspending a registration, in limited circumstances, DEA may bypass such process by issuing an ISO without affording notice or an opportunity to be heard to the pharmacy. *See* 21 U.S.C. § 824(d). However, DEA may only utilize this remedy where it finds that a registration poses an "***imminent*** danger to the public health or safety." *Id.* (emphasis added). The ISO remains in place until the administrative process concludes or the ISO is dissolved by a court of competent jurisdiction. *Id.* § 824(d)(1).

### B. The District Court is a Court of Competent Jurisdiction to Enjoin an ISO

Federal courts have long recognized that district courts are courts of competent jurisdiction that retain the ability to review motions for injunctive relief arising from an ISO: "[t]he plain language of [the CSA] means that one faced with becoming the victim of the harsh expedient of suspension without prior notice may resort to the appropriate district court in search of appropriate relief." *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 823–24 (5th Cir. 1976); *Neil Laboratories, Inc. v. Ashcroft*, 217 F. Supp. 2d 80, 84 n.6 (D.D.C. 2002) ("This court agrees with the Fifth Circuit's determination that the plain language of the CSA signifies that a registrant subject to immediate suspension of registration may seek judicial review by a district court before the suspension order becomes final.").

While final decisions made by the Attorney General as it pertains to the CSA are generally reviewable by the United States Court of Appeals for the District of Columbia, or the relevant

jurisdictional circuit court, district courts retain jurisdiction to hear motions for injunctive relief. *See* 21 U.S.C. § 877 ("any person aggrieved by a final decision of the Attorney General may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located"); *see also Novelty Distribs., Inc. v. Leonhart*, 562 F. Supp. 2d 20, 26–27 (D.D.C. 2008) (holding that "the D.C. Circuit has held that it has no jurisdiction prior to issuance of a final agency decision" and "that it is indeed the district court that has jurisdiction to hear a party's requests for relief, such as the preliminary injunction sought in the present case, prior to a final agency determination").

### C. Preliminary Injunctions Require a Showing of Four Factors

"'A plaintiff seeking a preliminary injunction must establish [1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest.'" *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S.Ct. 365, 374 172 L.Ed.2d 249 (2008)). "These four factors are not considered in isolation from one another, and no one factor is necessarily dispositive as to whether preliminary injunctive relief is warranted." *Beacon Associates, Inc. v. Apprio, Inc*., 308 F. Supp. 3d 277, 284 (D.D.C. 2018).

## ARGUMENT

SmartCareRx clearly establishes each of the required factors for a preliminary injunction; accordingly, the Court should enjoin Defendants from enforcing the ISO.

### A. SmartCareRx is Likely to Succeed on the Merits

SmartCareRx is likely to succeed on the merits of its APA claim because DEA's decision in issuing the ISO was arbitrary and capricious, particularly where DEA failed to consider

important parts of the issue and failed to take proper investigative steps before issuing the ISO.
Further, DEA failed to demonstrate any imminent danger to public health or safety, as is required
for the extreme remedy of issuing an ISO. Finally, DEA's issuance of the ISO, without ever
speaking to the Pharmacy or providing SmartCareRx with an opportunity to be heard, violates
SmartCareRx's due process rights under the Fifth Amendment.

### 1.  DEA's Actions Were Arbitrary and Capricious

SmartCareRx is likely to succeed on the merits of its APA claim. "The APA, 5 U.S.C. §
706, plays a crucial role in maintaining accountability within federal agencies." *Climate United
Fund v. Citibank, N.A.*, 778 F. Supp. 3d 90, 113 (D.D.C. 2025). Pursuant to the APA, a reviewing
court must "hold unlawful and set aside agency action, findings, and conclusions found to be [ ]
arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §
706(2)(A). An agency's action is arbitrary and capricious where, among other factors, the agency
"entirely ***failed to consider an important aspect*** of the problem, [or] ***offered an explanation for
its decision that runs counter to the evidence*** before the agency[.]" *Motor Veh. Mfrs. Ass'n v.
State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (emphasis
added).

An ISO is an extreme remedy that is only appropriate where DEA establishes an "imminent
danger to the public health or safety." 21 U.S.C. § 824(d)(1) (emphasis added); *see also Oak Hill
Hometown Pharmacy v. Dhillon*, 418 F. Supp. 3d 124, 128 (S.D. W. Va. 2019) ("The enabling
statute grants this court the specific power to dissolve the extraordinary action by a government
agency of suspending registration without due process."). In defining what constitutes "imminent
danger," the statute provides that "the phrase 'imminent danger to the public health or safety'
means that . . .  there is a substantial likelihood of an immediate threat that death, serious bodily

harm, or abuse of a controlled substance will occur in the absence of an immediate suspension of the registration." 21 U.S.C. § 824(d)(2). Here, on its face, the ISO lacks adequate reasoning, and fails to support a rational connection between purported "facts" and the decision to suspend SmartCareRx's COR. Moreover, the ISO is overly broad in prohibiting SmartCareRx from dispensing *all controlled substances*, rather than the three substances at issue.

      *a.  DEA's Allegations Do Not Support A Finding of Harm to the Public, Imminent or Otherwise*

DEA's allegations in the ISO fail to demonstrate the existence of any imminent threat to public health or safety. According to DEA, its "investigation revealed that between April 2024, and August 2025, the Pharmacy dispensed dangerous controlled substances to individuals without a valid prescription and for other than a legitimate medical purpose." *See* Ex. 1. at 2.  DEA largely bases this allegation on a claim that the Pharmacy dispensed oxycodone, hydromorphone, and promethazine with codeine to "fictitious patients." But DEA does not make any claims about the validity of the prescribing physicians or provide any reasoning as to why the Pharmacy would have suspected that these prescriptions were not for a real medical purpose.

DEA's central allegation is that approximately forty people "who have no associated public records" received controlled substances from the Pharmacy, "indicating these prescriptions were written to fictious patients." To date, DEA has declined to provide the names of the patients; however, public records searches of the names of individuals who appear to be identified by initial in the ISO show that many of these "fictitious" patients are verifiable people. *See* Ex. 3. DEA's claim that SmartCareRx was dispensing controlled substances to "fictitious patients" is demonstrably false. Even one of the patients at issue having any "associated public records" not only calls into question DEA's claims, but also undermines the thoroughness and integrity of the investigation.

To be clear, filling prescriptions that may be tainted by identity fraud — unbeknownst to the Pharmacy—is not a violation of the CSA. Even if the patients at issue were not real people, central to the question of whether a pharmacist has dispensed outside the usual course of professional practice and not for a legitimate medical purpose is whether a pharmacist *knew or should have known* that there was an issue with the prescription. *See* Wheatland Pharmacy; Decision and Order, 78 Fed. Reg. 69441, 69445 (Nov. 19, 2013). DEA's claim that SmartCareRx dispensed controlled substances to "fictious patients" is not enough in itself to make this showing, particularly where the prescriptions themselves were electronically submitted to the Pharmacy from DEA-licensed practitioners. Unlike in *Wheatland*, DEA makes no allegations that these real prescriptions bore any of the hallmarks of illegitimacy: there are no allegations that patients arrived in groups; that they came from hundreds of miles away; or that the prescriptions were filled outside of the appropriate time. In short, even if—for the sake of argument—the Pharmacy was duped into filling fraudulent prescriptions, there is no allegation that they should have known otherwise.

Similarly, DEA fails to substantiate any imminent danger arising from its conclusory allegation that the Pharmacy engaged in "unlawful dispensing" in March 2025. *See* Ex. 1, at 6. DEA claims its investigators observed a Pharmacy employee handing a "small red envelope" to an individual in a vehicle they suspected of engaging in "drug trafficking" on March 14, 2025. *See id.* DEA asserts that on March 19, 2025, it recovered a similar envelope containing bottles of oxycodone after a traffic stop of the vehicle. *See id.* To support the claim that the Pharmacy was "engaged in a drug deal," DEA then alleges that the Pharmacy had purchased and received those bottles of oxycodone on March 18, 2025. *Id.* DEA's own timeline undermines its theory: bottles delivered to the Pharmacy on March 18, 2025, cannot be the same controlled substances allegedly dispensed four days prior. In addition, DEA has not alleged or provided evidence that these

11

oxycodone bottles were not dispensed pursuant to a valid prescription or that the bottles were unlawfully diverted from the Pharmacy. In short, rather than offering proof to support its unlawful dispensing allegations, DEA invites an inference of wrongdoing based on a chain of attenuated and internally contradictory inferences.

In *Bates Drug Stores, Inc. v. Holder*, 2011 WL 1750066 (E.D. Wa. May 6, 2011), the court ruled it had "serious doubts that the alleged violations . . . pose[d] an imminent danger to public health and safety" where DEA's vague allegations of a pharmacy's misconduct failed to demonstrate any dangerous consequences resulted. *Id.* at *3. Specifically, the *Bates* court found that the ISO's identification of numerous CSA violations "lack[ed] specific facts demonstrating how those alleged violations were committed." *Id.* The court found these bare allegations were insufficient, as "[t]here is nothing in the record indicating that any [pharmacy] patient has been harmed or injured by the alleged violations. Nor is there any evidence that any controlled substance was dispensed to an improper individual, for an improper purpose, or in an improper dosage." *Id.* The same is true here—DEA's ISO includes threadbare allegations of alleged misconduct but fails to include any specificity of how these violations were committed, that any dispensing was improper or not for a legitimate medical purpose, or that any patient was harmed by such actions. Absent these specific facts, the ISO fails to satisfy the statutory threshold of demonstrating an imminent danger to public health or safety.

### b. DEA's Investigation Was Inadequate

DEA's allegations also highlight the inadequacy of the investigation underlying the ISO. That DEA conducted its investigation and issued the ISO without once communicating with SmartCareRx about any alleged misconduct underscores that Defendants' issuance of the ISO was arbitrary and capricious. In *Goodson Drug Co., Inc. v. Bondi*, 2025 WL 3405237 (N.D. Ga. Oct.

15, 2025), a federal court recently found that DEA's investigation, namely the lack of communication with the pharmacy, "trouble[d] the Court and suggest[s] that the ISO issued [ ] was arbitrary and capricious." *Id.* at \*6. Specifically, "DEA's lack of communication with [the pharmacy] during the investigation [struck] the Court as odd. While such communication is not a formal legal requirement, it seems that interviewing pharmacists and employees is a common practice before [ ] DEA issues an ISO." *Id.* (compiling federal caselaw illustrating that DEA investigators typically speak with pharmacy employees to identify and explain the issues as part of the investigatory process). Like *Goodson*, DEA's failure to interview or meaningfully communicate with SmartCareRx "casts a shadow over the record" and can be construed as "***entirely fail[ing] to consider important aspect[s] of the problem***.'" *Id.* (emphasis added).

c. *The Timing of The ISO Underscores the Agency's Action was Arbitrary*

Even if the facts as alleged by DEA supported a finding of potential harm to the public (they do not), DEA waited ***over four months*** after the conclusion of its investigation, and ***over nine months*** after the March 2025 parking lot delivery allegation to issue the OSC and ISO. DEA's months-long delay in acting upon its investigation undermines any claim of imminent danger as required to satisfy the statutory requirements to issue an ISO. In *Norman Bridge*, the Fifth Circuit upheld a district court's grant of injunctive relief where there was "no showing of imminent danger to the public" given DEA's seven-month delay in acting on the record.  *Norman Bridge*, 529 F.2d at 826. Such a long delay by DEA contradicts any claim of imminent danger as required by the statute and is sufficient grounds alone to grant SmartCareRx's request for a preliminary injunction.

d. *DEA's ISO is Overbroad and Not Narrowly Tailored to Address the Alleged Misconduct*

Finally, DEA's ISO is arbitrary and capricious as it is not narrowly tailored to address the alleged misconduct.  DEA regulations explicitly allow the administrator to limit the suspension of

a registration "to the particular controlled substance, or substances, with respect to which grounds for revocation or suspension exist." 21 C.F.R. § 1301.36(c). DEA takes issue with only *three* controlled substances dispensed by SmartCareRx in its ISO: oxycodone, hydromorphone, and promethazine with codeine. *See* Ex. 1. DEA could have taken a more narrowly tailored approach, and suspended the Pharmacy's registration only for oxycodone, hydromorphone, and promethazine with codeine, and the regulations provide specific instructions on the procedure for doing so. *See* 21 C.F.R. § 1301.36(g) ("In the event that revocation or suspension is limited to a particular controlled substance or substances, the registrant shall be given a new Certificate of Registration for all substances not affected by such revocation or suspension"). Yet, despite these available procedures, DEA's ISO prohibits SmartCareRx from dispensing ***all*** controlled substances.

As noted in SmartCareRx's Motion for Temporary Restraining Order, SmartCareRx would have, and still is prepared to, voluntary cease ordering and dispensing the three controlled substances at issue until the conclusion of the administrative proceedings. *See* Pl.'s Mot. for Temporary Restraining Order, Dkt. No. 5, at 12. However, DEA decided not to communicate with the Pharmacy at any point and issued the ISO for all controlled substances, a decision that has—and continues to—significantly impact many of SmartCareRx's patients' ability to obtain their needed, life-saving medication. DEA's decision to issue the ISO suspending SmartCareRx from dispensing all controlled substances was arbitrary and capricious as it was overbroad and failed to consider a more narrowly tailored alternative that is available to DEA. *See Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 815, 815 n.35 (D.C. Cir. 1983) (holding that agency's "failure to consider such alternatives, and to explain why such alternatives were not chosen, was

arbitrary and capricious, in violation of . . . the APA") (citing *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 48).

### 2.   DEA Violated SmartCareRx's Due Process Rights By Issuing the ISO

SmartCareRx will also likely succeed on the merits of its due process claim. By issuing the ISO following an inadequate investigation that involved absolutely no communication with the Pharmacy, DEA unilaterally deprived SmartCareRx of its due process rights guaranteed by the Fifth Amendment of the U.S. Constitution.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause[.]" *Matthews v. Eldrige*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). In evaluating a due process clause claim, a court considers: "(1) whether the plaintiff has been deprived of a protected interest in property or liberty; and (2) if such a deprivation is shown, whether the government's procedures comport with due process." *Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 229 (D.D.C. 2012) (citing *General Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010)).

Here, it is without question that SmartCareRx possesses a protected property interest in its DEA registration, s*ee Cardinal Health, Inc.*, 846 F. Supp. 2d at 229 (recognizing that a pharmacy holds "a protected property interest in its DEA registration"), and under the circumstances, DEA's procedures did not comport with due process. Again, as detailed above, DEA acted arbitrarily and capriciously in issuing the ISO. It did so without demonstrating any finding of imminent harm, without communicating even once with the Pharmacy, and without allowing the Pharmacy to explain any alleged wrongdoing. Though the government is permitted "to take summary administrative action without pre-deprivation process" this assumes that there will be "a prompt

post-deprivation hearing" and "such action is needed to protect public health and safety." *See id.* (internal citations omitted). That is not the case here.

As of the date of this filing, there are no DEA ALJs confirmed. On August 1, 2025, Chief ALJ John Mulrooney retired. In announcing his retirement, he noted that his "retirement will leave the DEA with no Administrative Law Judge to hear this matter or any of the Agency's other pending administrative enforcement cases." *In the Matter of Schedules of Controlled Substances: Proposed Rescheduling of Marijuana*, DEA Dkt. No. 1362, Hrg. Dkt. No. 24-44 (DEA ALJ July 23, 2025). As of February 25, 2026, DEA has not appointed any ALJs to hear pending cases and SmartCareRx's Administrative Proceedings are on hold until further notice. This deprives SmartCareRx of its right to be heard. A "prompt" hearing is a factual impossibility when no ALJs are available to preside, resulting in a clear infringement of SmartCareRx's due process rights. These facts weigh heavily in favor of injunctive relief. By issuing the ISO at a time when a lack of ALJs effectively halts all proceedings, the DEA has denied SmartCareRx any meaningful opportunity to be heard or the "prompt" post-deprivation hearing required by law.

## B. SmartCareRx Will Suffer Irreparable Harm Absent Injunctive Relief.

Without a preliminary injunction, SmartCareRx will continue to grapple with an irreversible loss of its business reputation, goodwill, customer base, and resulting economic damages. These losses are not recoverable, and are indeed irreparable. *See League of Women Voters of United States v. Newby*, 838 F.3d 1, 7–8 (D.C. Cir. 2016) ("The party seeking a preliminary injunction must make two showings to demonstrate irreparable harm. First, the harm must be 'certain and great,' 'actual and not theoretical,' and so 'imminen[t] that there is a clear and present need for equitable relief to prevent irreparable harm.' . . . Second, the harm 'must be beyond remediation.'") (internal citation omitted).

16

First, SmartCareRx has built a strong reputation in the community, reliably providing specialty medications in a timely manner. *See* Ex. 2, ¶ 3. For example, prior to the ISO, SmartCareRx established itself as the primary supplier for Spravato, a Schedule III controlled substance for patients suffering treatment-resistant depression. Spravato requires strict healthcare provider supervision and is subject to a high level of regulatory complexity. *See id.* In addition, prior to having its registration suspended, SmartCareRx filled prescriptions for controlled substances such as Adderall and other similar Schedule II stimulants to pediatric patients diagnosed with neurological disorders, such as ADHD. These medications are imperative for pediatric patients, who require the medication as a necessity for cognitive function and academic stability.

There is no doubt that leaving SmartCareRx in a position where it cannot fill necessary prescriptions for its patients harms the Pharmacy's goodwill and business reputation in the community. Federal courts recognize that harm to business reputation and the loss of goodwill is sufficient to constitute irreparable injury. *See Goodson Drug Co., Inc.*, 2025 WL 3405237, at *8 ("[i]rreparable injury may be shown by the loss of 'goodwill and long-time customers'"); *Patriot, Inc. v. U.S. Dept. of Housing and Urban Dev.*, 963 F. Supp. 1, 5 (D.D.C. 1997) (ruling that plaintiff "demonstrated irreparable harm in damage to their business reputation").  For example, in *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 78 (D.D.C. 2001), the court found that the plaintiff "would likely suffer irreparable harm in the loss of its customers and by the possibly permanently damaged relationships with its customers." *Id.* at 78 (internal citations omitted). Finding that the plaintiff spent dedicated efforts and money to build its customer base to handle personal information, the court ruled that the possibility of permanent damage and loss of "customer trust and goodwill" constituted irreparable harm. *Id.* at 77. Similar to the facts here, patient and customer

17

loyalty for a pharmacy is grounded in personal relationships built on trust, quality service, and convenience

In *Beacon Associates, Inc.*, the court noted that in a contract dispute where the plaintiff was terminated for default, the "black mark" on plaintiff's reputation was irreparable absent an injunction as it would result in lost opportunities. 308 F. Supp. 3d at 288. SmartCareRx faces a similar plight. The impact of having DEA strip the Pharmacy of its ability to dispense *all controlled substances* for months has been grave: physicians and patients who once relied upon SmartCareRx for controlled substances have taken their business elsewhere. Moreover, healthcare partners may not want to be associated with the Pharmacy for unfounded fear of regulatory repercussions.

In addition, economic harm—unrecoverable revenue—has resulted from the inability to dispense controlled substances. *See Holiday CVS, L.L.C. v. Holder*, 2012 WL 10973832, *2 (D.D.C. Feb. 7, 2012) ("Plaintiffs will certainly lose revenues from sales of controlled substance medications and from non-prescription product sales to customers who come to CVS primarily to fill their prescriptions."); *see also Bates Drug Stores, Inc.*, 2011 WL 1750066, at *2 (finding that "[plaintiff] is likely to suffer irreparable harm in the absence of [injunctive relief] enjoining [ ] DEA's enforcement of the Suspension Order. Plaintiff will likely suffer harm in the form of lost revenue, [and] harm to reputation and goodwill[.]"). SmartCareRx's inability to provide services to their customers threatens a permanent exodus of the Pharmacy's customer base. Indeed, as a practical matter, having physicians send different prescriptions to different pharmacies requires additional time and effort; similarly, requiring patients to visit multiple pharmacies is also a deterrent that has eroded SmartCareRx's customer base.[2] This is not speculative—"[t]he Pharmacy has lost hundreds of customer profiles since DEA's ISO." Ex. 2, ¶ 8.

---

[2] SmartCareRx does not have to wait until more of its customers actually leave to show irreparable harm: "a preliminary injunction requires only a likelihood of irreparable injury, *see Winter*, 555 U.S. at 22, 129 S.Ct. 365,

And SmartCareRx will not be able to recover its economic losses due to DEA's sovereign immunity. *See* 5 U.S.C. § 702 (an APA cause of action waives sovereign immunity only for "relief other than money damages"). While economic harm itself may not always be considered irreparable, it may be where the damage is unrecoverable. *See Holiday CVS, L.L.C.*, 2012 WL 10973832, at *2 ("Some courts in this District have held that an irretrievable economic harm is irreparable *per se* for purposes of [an injunctive relief] analysis.") (citing *Smoking Everywhere, Inc. v. U.S. Food and Drug Admin.*, 680 F. Supp. 2d 62, 77 n.19 (D.D.C. 2010); *Feinerman v. Bernardi*, 558 F. Supp. 2d 36, 51 (D.D.C. 2008)); *see also Goodson Drug Co., Inc.*, 2025 WL 3405237, at *8 ("And while mere 'economic harm' typically is not irreparable, it may be where, as here, sovereign immunity blocks any 'adequate remedy at law to recover damages.'").

SmartCareRx is not a large pharmacy—the harm to this independent business is sure to be exacerbated by a lengthy administrative process without its registration. *See Holiday CVS, L.L.C. v. Holder*, 839 F. Supp. 2d 145, 170 (D.D.C. 2012), *vacated and remanded*, 493 F. App'x 108 (D.C. Cir. 2012) (contrasting large chain pharmacy with "self-sustaining 'mom and pop' stores which live or die based solely on the revenue they independently generate"). DEA has yet to assign an Administrative Law Judge to the administrative proceedings in this matter. *See* Ex. 6. Thus, SmartCareRx has no timeline for when it may be able to resume dispensing control substances, leaving the Pharmacy without the ability to dispense controlled substances indefinitely.

In fact, DEA administrative proceedings often take ***over a year*** after the issuance of the OSC and ISO before a final agency ruling is officially issued. *See* Prescript Pharmaceuticals; Decision and Order, 90 Fed. Reg. 14476, 14476 (Apr. 2, 2025) (OSC and ISO issued on November 17, 2023, ALJ findings of fact and recommended rulings issued on October 31, 2024, with agency

---

(2008), Damocles's sword does not have to actually fall on [the Pharmacy] before the court [can] issue an injunction." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 8–9 (D.C. Cir. 2016).

adoption and final ruling on April 2, 2025); *see also* Neumann's Pharmacy, LLC; Decision and Order, 90 Fed. Reg. 8039, 8039 (Jan. 23, 2025) (OSC served on September 12, 2023, ALJ issued findings of fact and recommended decision on June 18, 2024, with agency adoption and final ruling on January 23, 2025). SmartCareRx might be waiting until at least 2027 before it even receives an initial decision from an ALJ. Without a resolution of the administrative proceedings in sight, SmartCareRx will continue to suffer damage to its business reputation, customer base, goodwill, and revenue. This Court should enter injunctive relief.

**C.  The Balance of Hardships Lies in Favor of SmartCareRx**

The balance of hardships lies strongly in favor of SmartCareRx. While the Pharmacy, and its patients, continue to suffer injury since the issuance of ISO, DEA will not suffer injury if the Court grants SmartCareRx's request for a preliminary injunction.

As stated above, SmartCareRx is willing and ready to voluntarily cease distribution of any oxycodone, hydromorphone, and promethazine with codeine during the pendency of the administrative hearing. This allows DEA to protect its interest in regulating the distribution of controlled substances, while still allowing the Pharmacy to serve its patients their other prescribed medications. *See Holiday CVS, L.L.C. v. Holder*, 2012 WL 10973832, *2 (D.D.C. Feb. 7, 2012) ("The balance of the hardships strongly favors plaintiffs in this case since they have agreed to suspend dispensing [ ] controlled substances [at issue] pending the decision of an ALJ on the merits.").

Moreover, DEA can further protect its interests through the administrative process. *See Goodson Drug Co., Inc.*, 2025 WL 3405237, at *9 (finding the third element of a preliminary injunction to be in plaintiff's favor where DEA can protect their interest "through its speedy administrative process"). SmartCareRx on the other hand, will suffer irreparable harm absent

injunctive relief, and the Pharmacy's interest in serving its customers will be severely harmed without an injunction.

### D. Injunctive Relief is in the Interest of the Public

Granting SmartCareRx's request for a preliminary injunction serves the public interest because it allows the Pharmacy to continue serving needed medication to its patients. Specifically, granting the Pharmacy its requested injunctive relief will allow SmartCareRx to continue its practice working to provide prescriptions to its pediatric patients, such as ADHD medication, in addition to continuing to provide Spravato treatments to the community. In *Holiday CVS, L.L.C.*, this jurisdiction acknowledged that there is "a public interest in continued customer access to" filling prescriptions, and that preventing pharmacies "from filling these prescriptions would inure to the detriment of sick and elderly patients who are used to filling their prescriptions there and could have trouble moving elsewhere." 2012 WL 10973832, at \*2. Similar to the facts here, the *Holiday CVS, L.L.C.* court recognized that without injunctive relief, the Pharmacy will continue to be prohibited from distributing *any* controlled substances to its customer base "despite the lack of any evidence that the harm prompting the ISOs arose from anything other than oxycodone distribution." *Id.*

Further, the public interest is not served by upholding DEA's arbitrary and capricious decision. SmartCareRx poses no imminent harm to public health or safety, and the ISO has only harmed the public from continued access to their prescriptions. Federal courts have recognized that "the public also has an interest in limiting arbitrary actions by government agencies, particularly when those actions may directly impact the public's access to needed controlled substances." *Goodson Drug Co., Inc.*, 2025 WL 3405237, at \*9.

In the absence of any demonstrable danger to the public, and given the public's interest in continued access to controlled substances, granting injunctive relief is in the interest of the public.

<u>**CONCLUSION**</u>

For the foregoing reasons, SmartCareRx respectfully requests that this Court grant its request for a preliminary injunction and enjoin Defendants from enforcing the ISO during the pendency of the administrative proceedings.

Dated: February 25, 2026                    Respectfully submitted,

/s/ Jillian Willis
Jillian Willis (D.C. Bar No. 995811)
Madeline Bergstrom (D.C. Bar No. 90020102)
Brook Andrews (*D.D.C. application forthcoming*)
Cheryl Risell (*D.D.C. pro hac vice forthcoming*)
NELSON MULLINS RILEY & SCARBOROUGH LLP
101 Constitution Ave NW, Suite 900
Washington, DC 20001
Telephone: (202) 689-2859
Facsimile: (202) 689-2860
Jillian.Willis@nelsonmullins.com
Madeline.Bergstrom@nelsonmullins.com
Brook.Andrews@nelsonmusllins.com
Cheryl.Risell@nelsonmullins.com
*Counsel for Adya LLC d/b/a SmartCareRx*

22